IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **KRYST'L R. BAYNE,** } | |
| } | |
| Plaintiff } | |
| } | |
| v. } | Case. No.: 5:07-CV-0014-RDP |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **Commissioner of Social Security,** } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Plaintiff, Kryst'l R. Bayne, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.      Proceedings Below**

Plaintiff filed her application for SSI benefits on September 8, 2003. (R. 60-65).[1] Plaintiff's application was denied initially and also upon reconsideration. (R. 42, 47). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), which was held on May 18, 2005. (R. 47, 666-724). In the August 19, 2005 decision, the ALJ determined that Plaintiff was not

---

[1] Plaintiff was found disabled as a child based on her September 17, 1991 application for child's SSI. (R. 8, 54, 55). As of September 2001, Plaintiff's impairment had medically improved, and she was no longer entitled to child's SSI. (R. 9-21, 28). Thereafter, on November 6, 2002, Plaintiff filed an adult application for SSI benefits (R. 59, 60), which was denied initially on February 20, 2003. (R. 37). Plaintiff did not appeal that determination.

eligible for SSI benefits because she failed to meet the disability requirements of the Act and retained the residual functional capacity to perform sedentary work with certain limitations. (R. 7J-7W).

Plaintiff requested review of the ALJ decision by the Appeals Council and submitted additional evidence that was made part of the record on review. (R. 7A, 7D). After the Appeals Council denied Plaintiff's request for review on November 2, 2006 (R. 7A, 7D), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the hearing in question, Plaintiff was twenty-eight years old (a "younger person" according to 20 C.F.R. § 416.963(c)), had a high school equivalent education, and had completed one semester at a community college. (R. 65, 397, 669-70). Plaintiff has no past relevant work experience, having been on SSI since the age of fourteen. (R. 7K, 722). Plaintiff alleges that she has been unable to engage in substantial gainful activity since September 8, 2003, when she became unable to work due to the following conditions: severe scoliosis (status post two back surgeries); depression; anxiety and panic attacks; arthritis; migraine headaches; irritable bowel syndrome; and chronic, severe pain and numbness in her neck, back, legs, and arms. (R. 7K, 65, 671-720).

Plaintiff testified at the May 18, 2005 hearing that she suffers from constant pain. Plaintiff had her first back surgery in 1992 to install rods in her back to correct her scoliosis. (R. 673-74). In December 2001, those rods were removed because they were protruding and causing her great pain. (R. 674-76). Plaintiff testified that she has a difficult time bending over, lifting items, and gripping items, and she noted that if she raises her arms, they will go numb. (R. 678-79). She testified that there are days when she is unable to walk. (R. 680). Plaintiff rated her pain, which runs from her

neck to her tailbone and is constant and throbbing, as a "seven" on a ten-point pain scale. (R. 676-77). Plaintiff also rated the pain in her legs and arms as a "seven" on a ten-point pain scale, but she noted that the pain in her legs can increase to a "nine" on some days. (R. 679, 685).

Plaintiff is married and lives with her husband, nine year-old daughter and four year-old son in a two-story house. (R. 671). Plaintiff estimates that she can sit for ten to fifteen minutes before she needs to move to relieve her pain (R. 697), and she testified that she is not on her feet for longer than an hour throughout the day because this increases her pain. (R. 699). According to Plaintiff, she spends most of the day reclining to relieve pressure in her back. (R. 700). Plaintiff also testified that she has difficulty walking and lifting items (R. 698), and she has a panic attack if she leaves her house without her husband (R. 713-14).

**II.     ALJ Decision**

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the

residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. (R. 7K). The ALJ determined that Plaintiff has severe impairments of a history of scoliosis requiring corrective surgery with rods and later removal of the rods, mild scoliosis following surgery, mild degenerative disk disease of the lumbar spine, and depression/anxiety (R. 7L), although he found that her impairments, considered either alone or in combination, fail to meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 7L). The ALJ determined that Plaintiff retains the residual functional capacity to perform sedentary work with a sit/stand option and no overhead reaching. (R. 7T). He also found that she has no more than moderate limitations in her ability to respond to the mental demands of the workplace. (R. 7T).

According to the ALJ, Plaintiff's subjective complaints concerning her impairments and their impact on her ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record and Plaintiff's own statements. (R. 7P-7T, 7V).

Plaintiff has no past relevant work experience. (R. 7V, 722). The ALJ called Barbara Azzam, a vocational expert who was present throughout the hearing and familiar with Plaintiff's background, to testify. (R. 721-22). Ms. Azzam testified that an individual with Plaintiff's limitations could perform jobs such as surveillance monitor, order clerk, and information clerk, which exist in significant numbers in the regional and national economies. (R. 722-23). Based on Ms. Azzam's testimony, the ALJ found that a significant number of jobs that Plaintiff is capable of performing exist in the national economy and, therefore, Plaintiff was not under a disability at any time through the date of the decision. (R. 7U).

**III.     Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 9, at 11). Plaintiff argues that, for the following reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) the ALJ failed to properly apply the three-part pain standard; (2) the ALJ placed undue emphasis on Plaintiff's daily activities; and (3) the Appeals Council failed to give proper

weight to newly submitted medical opinions from treating physicians[2] or to remand for consideration of that evidence.

## IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a

---

[2] Although Plaintiff's initial brief suggests that she takes issue with *the ALJ's* assignment of weight to opinions rendered by treating physicians Doctors Murphy and Sawyer (*see, e.g.,* Doc. # 9, at 8 (citing to caselaw regarding the proper weight to be accorded by the ALJ to a treating physician and arguing "The Commissioner Failed to Give Proper Weight to Plaintiff's Treating Physician")), *the April 27, 2006 and August 4, 2006 opinions to which she cites were issued after the ALJ's August 19, 2005 decision and were only presented to the Appeals Council*. (R. 663, 665). Thus, Plaintiff's arguments related to those post-decisional opinions – *i.e.,* that the ALJ ignored the opinions of Sawyer and Murphy when he applied the pain standard or failed to assign proper weight to their opinions when comparing them to those of other physicians – are relevant only to the extent they address the Appeals Council's consideration of that evidence as those opinions were never presented to the ALJ. Accordingly, any references to the post-decisional opinions submitted by Doctors Murphy and Sawyer are addressed by the court in its consideration of the evidence before the Appeals Council.

conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### V.     Discussion

Against the backdrop of applicable standards, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ properly applied the three-part pain standard and placed appropriate emphasis on Plaintiff's daily activities, and that the Appeals Council properly handled the newly submitted evidence from two of Plaintiff's treating physicians.

#### A.     **Application of Three-Part Pain Standard**

Plaintiff first alleges that in determining her ability to work, the ALJ did not appropriately evaluate her alleged pain and subjective symptoms. (Doc. # 9, at 4-8, 9-11). The Act and its related regulations provide that a claimant's statements about pain or other symptoms will not alone establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929. Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

When a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of

the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain. *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the Commissioner of Social Security fails to credit a claimant's pain testimony, he must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses. Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain. *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839. Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard, *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In this case, the court finds that the ALJ's analysis comports with the requirements of the Eleventh Circuit's "pain standard" for evaluating Plaintiff's allegations of pain. Here, the ALJ cited 20 C.F.R. § 404.1529 and the Eleventh Circuit caselaw outlining the above method for assessing subjective complaints of pain. (R. 7L). In light of those standards, the ALJ considered Plaintiff's

subjective complaints and determined that her statements concerning her impairments, pain and their impact on her ability to work were not entirely credible in light of Plaintiff's response to treatment as shown in the medical evidence, the limited objective findings in the medical evidence compared with Plaintiff's subjective complaints, and Plaintiff's testimony and statements regarding her activities of daily living. (R. 7L-7T).

More specifically, the ALJ cited at least three types of evidence in the record that demonstrate Plaintiff's subjective allegations are not entirely credible. (R. 7L-7T). First, the ALJ considered Plaintiff's scoliosis diagnosis and post-surgery progress as demonstrated by the objective medical evidence (including MRIs) and surgeon's notes (R. 7K, 7M-7N, 277, 578, 516), and reasonably found that the post-surgical medical evidence was inconsistent with Plaintiff's allegation of a severe, debilitating back pain. (R. 7P-7Q). *See Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (reasoning that ALJ properly doubted claimant's allegations of disabling pain where there were "no clinical findings indicative of a back impairment of the degree of severity described by [the claimant]"). Second, the ALJ noted significant treatment gaps in the record where Plaintiff has not sought treatment for her back pain and either has not reported symptoms or only reported limited symptoms. (R. 7N-7P, 372-73, 377, 380-82, 567, 573, 640-61). Accordingly, the ALJ properly found that such an unexplained inconsistency between Plaintiff's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of her credibility and can be considered in assessing her claims. 20 C.F.R. § 416.929(c)(4); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Third, the ALJ's assessment of Plaintiff's credibility included a comprehensive look at the opinions of her physicians and an individualized assessment of whether each doctor's opinion was

supported by the medical evidence. For example, although the ALJ recognized that Plaintiff received treatment from Dr. Murphy commencing in July 2004, he observed that Dr. Murphy's opinions of her condition were primarily based on her subjective presentation rather than any objective findings. (R. 7P). *See Crawford v. Barnhart*, 363 F.3d 1155, 1159 (11th Cir. 2004) (reasoning that ALJ properly rejected the opinion of a treating physician "based primarily on Crawford's subjective complaints of pain"). Moreover, Dr. Murphy prescribed significant amounts of medication, and the ALJ noted some evidence of a problem in this regard. (R. 7Q). The ALJ also considered (but, contrary to Plaintiff's assertions, did not give undue weight to) the opinion of Stuart Stephenson, M.D., a state agency orthopedic consultant who concluded that Plaintiff could perform light work. (R. 7Q, 424-30). Finally, the ALJ considered the disparate outcomes of two separate consultative examinations by Dr. Marlin Gill that first indicated Plaintiff could perform sedentary work (R. 7N, 370-71) but later opined that Plaintiff was not capable of working. (R. 7Q, 7P, 401-403). The ALJ found that the only real difference between Dr. Gill's two examinations was that in the subsequent examination, Plaintiff's subjective presentation had worsened in that she walked slowly and complained of pain and stiffness with any movement. Thus, the ALJ afforded less weight to the subsequent examination because the change in Dr. Gill's opinion was based solely on Plaintiff's subjective presentation and did not correlate with any objective worsening in Plaintiff's condition. (R. 7P).

Based upon the analysis outlined above, the court finds that substantial evidence supports the ALJ's decision that Plaintiff's subjective allegations were not credible and that she retained the ability to perform a range of sedentary work.

### B.      Emphasis on Plaintiff's Daily Activities

Next, Plaintiff contends that the ALJ improperly placed "significant" emphasis upon Plaintiff's daily activities when he found those activities to be inconsistent with her allegations of disabling pain. (Doc. # 9, at 9). Notably, however, the characterization in Plaintiff's brief of her daily activities – "attempts to perform simple household tasks, help[] with the care of her children, sort[ing] clothes, sitt[ing] in a recliner, and . . . [having] help with washing her hair and shopping" (Doc. # 9, at 9) – does not paint the whole picture of the evidence and testimony before the ALJ. The ALJ had evidence before him that Plaintiff engaged in activities such as light cleaning, vacuuming in limited increments, reading and watching cartoons with her son, cleaning up after her son and daughter, occasional driving, doing the laundry, and getting her husband ready for work and daughter ready for school (R. 7S-7T, 116-20, 155-56, 367, 398), in addition to completing a semester of college just prior to applying for benefits. (R. 185).

While it is clear in this Circuit that "participation in everyday activities of short duration" does not mean that a claimant is not disabled, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), such activities are relevant to the matter of Plaintiff's credibility. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005) (finding that ALJ properly considered claimant's daily activities, frequency of symptoms, medications, and found subjective complaints were inconsistent with plaintiff's medical record). Indeed, the Eleventh Circuit has affirmed adverse credibility findings based on daily activities such as those present in this case. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)(affirming adverse credibility finding in light of claimant's ability to drive, provide childcare, bathe, care for herself, and perform housework); *Graham v. Apfel*, 129 F.3d 1420, 1421-22 (11th Cir. 1997)(reasoning that activities

such as child care, attending school, and performing household chores supported ALJ's conclusion that Plaintiff could perform light work).

Thus, this court finds that the ALJ properly determined that Plaintiff retained functional abilities based, in part, on his assessment that her daily activities demonstrated her capability of sitting, traveling to and from classes, carrying books and papers, making decisions, limited walking and standing, maintaining a schedule, and good use of her hands. (R. 7S-7T). Those findings, in light of the additional medical and objective evidence above, demonstrate that substantial evidence supports the ALJ's decision and proper legal standards were applied.

### C.  Appeals Council's Treatment of the Newly Submitted Medical Opinions

As noted earlier, Plaintiff's briefs insinuate that the Appeals Council failed to consider opinions from two treating physicians, an April 27, 2006 letter from Dr. Mark A. Murphy and an August 4, 2006 letter from Dr. Sidney A. Sawyer, which Plaintiff submitted to the Appeals Council in connection with her Request for Review. (Doc. # 11, at 1; Doc. # 9, at 6; R. 7D). Specifically, Plaintiff criticizes the "egregious error committed by the Appeals Council in not even providing rationale for dismissing said evidence, issuing a form denial." (Doc. # 11, at 1). The court emphasizes again that both of the medical opinions submitted to the Appeals Council were issued after the ALJ's August 19, 2005 decision.

The Eleventh Circuit has made clear that "this will be our rule: when the [Appeals Council] has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Here, Plaintiff's argument that the additional evidence establishes that the ALJ's decision was not based on substantial evidence is precluded by Eleventh Circuit precedent;

district courts in this Circuit cannot consider evidence submitted only to the Appeals Council when determining whether the ALJ's decision was based on substantial evidence.[3]

Although it is inappropriate for this court to consider evidence submitted anew to the Appeals Council when reviewing the ALJ decision for substantial evidence, the Eleventh Circuit has carved out two other circumstances in which this court should take account of the newly submitted evidence: (1) for purposes of remand under 42 U.S.C. § 405, sentence six; or (2) if the Appeals Council refuses to consider "new and material" evidence and such refusal amounts to an error of law. *Falge*, 150 F.3d at 1323-24.  First, this court has the power pursuant to § 405(g) to remand a case to the Social Security Administration to permit the SSA to consider that newly submitted evidence *if, and only if*, the plaintiff has shown "that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." *Falge*, 150 F.3d at 1323 (citing *Cannon v. Bowen*, 858 F.2d 1541 (11th Cir.1988)).  Thus, if a plaintiff "can show good cause for his failure to introduce evidence during a hearing before the ALJ (even if the evidence was available to the applicant before the ALJ's

---

[3] Thus, as noted earlier, Plaintiff's arguments that the post-ALJ decision opinions of Doctors Murphy and Sawyer were inappropriately assessed less weight than that of other physicians of record is purely hypothetical.  (*See, e.g.,* Doc. # 9, at 6-9 (contesting the ALJ's reliance on Dr. Gill's and Dr. Stephenson's opinions by pointing to the post-decisional opinions of Doctors Sawyer and Murphy); Doc. # 11, at 2 (continuing to assert that greater weight should not have been accorded to non-treating Dr. Stephenson over the treating physicians who submitted post-decisional opinions)).  The ALJ did not engage in those comparisons when he made his decision, and neither can this court.  This Circuit has made clear that it would be merely speculative to consider whether those post-decision opinions would or should tip the scale of substantial evidence in favor of reversal of the ALJ decision.

decision), courts may consider that evidence in deciding whether the case should be remanded for further administrative proceedings to include the new evidence." *Falge*, 150 F.3d at 1323-24.

But that is simply not the case here. Just as in *Falge*, the newly submitted evidence in this case was prepared after the ALJ decision was rendered, and Plaintiff "has provided no reason – no good cause – why [the two doctors'] report[s] w[ere] not made available during proceedings before the ALJ." *Falge*, 150 F.3d at 1323. Indeed, Plaintiff never even mentions the statutory requirements for remand under sentence six of 42 U.S.C. § 405(g), much less demonstrates how the evidence she submitted warrants remand.[4]

A second circumstance exists in which this court must examine evidence submitted to the Appeals Council after the ALJ decision: "When the Appeals Council refuses to consider new

---

[4] Even if Plaintiff had raised the issue of remand, that relief is not available to her here because the opinions of Doctors Sawyer and Murphy do not meet the § 405(g) requirements: They are conclusory, inconsistent with information that was before the ALJ, and are not material because they do not relate to the period prior to the ALJ decision and, in any event, would not have reasonably resulted in a change in the decision. *Wilson v. Apfel*, 179 F.3d. 1276, 1278 (11th Cir. 1999). As noted earlier, the two opinions were rendered many months after the date of the ALJ's decision, and there is no indication that either doctor related his opinion to the period considered by the ALJ. To be material, the evidence must relate to the period prior to the ALJ's decision. *Wilson*, 179 F.3d. at 1278 (reasoning that a doctor's examination conducted after the ALJ's decision was not probative of any issue in the case). Moreover, Dr. Murphy's letter, which fails to refer to any functional limitations actually experienced by Plaintiff and is unsupported by laboratory tests or diagnostic procedures, is nothing more than a conclusory opinion of disability that is not entitled to "any special significance." 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p; *see also Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) ("An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled. It must be supported by clinical and laboratory findings."). Moreover, Dr. Sawyer's assessment of Plaintiff's spinal impairment is inconsistent with the other medical evidence of record including the opinions of other physicians and the objective medical evidence. Thus, the Appeals Council appropriately determined that these opinions, when considered in conjunction with the evidence that was before the ALJ, provided no basis for changing the ALJ's decision. (R. 7A). Accordingly, even if Plaintiff had properly preserved an argument under sentence six of § 405(g), which she has not, the additional evidence is not "material" and fails to satisfy the criteria for remand.

evidence submitted to it and denies review, that decision [the denial of review] is . . . subject to judicial review because it amounts to an error of law." *Falge*, 150 F.3d at 1324 (internal quotations omitted). In that situation, this court's review of the Appeals Council's denial of review of the ALJ decision must include an examination of the newly submitted evidence "to determine if the evidence is new and material, the kind of evidence the [Appeals Council] must consider in making its decision whether to review an ALJ's decision." *Falge*, 150 F.3d at 1324 (citing 20 C.F.R. § 404.970(b) ("Appeals Council shall evaluate the entire record including the new and material evidence submitted to it if it relates to the period on or before the date of the administrative law judge hearing decision."); 20 C.F.R. § 416.1470(b) (same)).

Again, however, that is not the case here. Although Plaintiff quarrels with the Appeals Council's "form denial" and alleged failure to "provide [a] rationale for dismissing [her newly asserted] evidence," (*see* Doc. # 11, at 1; Doc. # 9, at 6), "the record seems to show affirmatively that the [Appeals Council] did consider this evidence when it denied review." *Falge*, 150 F.3d at 1324 n.9. Any suggestion that the Appeals Council refused to consider the two opinions is not consistent with the record, which affirmatively shows that it made the additional medical reports part of the record and denied Plaintiff's request for review after considering "the reasons you disagree with the decision and the additional evidence listed." (R. 7A, 7D).[5]

---

[5] In any event, the Appeals Council would have been warranted in not considering those opinions. The regulations provide that if new and material evidence is submitted, the Appeals Council shall consider the additional evidence *only* where it relates to the period on or before the date of the ALJ decision. *See* 20 C.F.R. §§ 404.970, 416.1470(b), 404.976, and 416.1476(b). The Appeals Council will then review the case if it finds that the ALJ's action, findings, or conclusions are contrary to the weight of the evidence currently of record. *Id.* Here, both of the medical opinions submitted as new evidence were issued after the ALJ's denial of benefits and thus were not time-relevant.

In light of Plaintiff's failure to show that this court should consider the newly submitted evidence, the issue before this court is not whether the Appeals Council "correctly determined if the evidence was new and material, [] but instead whether the ALJ's decision is supported by substantial evidence." *Falge*, 150 F.3d at 1324 (internal footnote omitted).  As outlined previously, Plaintiff's arguments fail to demonstrate that the ALJ's decision was not supported by substantial evidence.

## VI.   Conclusion

Thus, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this ___7th___ day of March, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE